IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2017

## STATE OF TENNESSEE v. MARVIS DESHUN POLLARD

**Appeal from the Circuit Court for Tipton County**
**No. 8503      Joe H. Walker, III, Judge**

_____

### No. W2016-01788-CCA-R3-CD

_____

A Tipton County jury convicted the Defendant, Marvis Deshun Pollard, of possession of 0.5 grams or more of methamphetamine with the intent to deliver; delivery of 0.5 grams or more of methamphetamine; simple possession of oxycodone; tampering with evidence; felony evading arrest posing a risk of danger to others; and driving on a canceled, suspended, or revoked driver's license.  The trial court imposed an effective sentence of sixteen years.  On appeal, the Defendant contends that the evidence is insufficient to support his methamphetamine convictions.  Upon reviewing the record and the applicable law, we affirm the judgments of the trial court.  We remand the case to the trial court for entry of corrected judgments reflecting merger of the methamphetamine convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Michael Thorne, Lexington, Tennessee (on appeal); Christie Hopper, Jackson, Tennessee (on appeal); and Jeff Woods, Memphis, Tennessee (at trial), for the appellant, Marvis Deshun Pollard.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Mark E. Davidson, District Attorney General; and Walter Freeland, Jr. and Jason Poyner, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### PROCEDURAL AND FACTUAL BACKGROUND

On June 19, 2015, Investigator Brent Chunn with the Tipton County Sheriff's Office conducted an undercover drug operation targeting the Defendant. Officers planned to use a criminal informant to purchase methamphetamine from the Defendant in the parking lot of a Dollar General store located off Highway 14 in Tipton County. Investigator Chunn obtained $180 in cash from the drug fund, photographed the money, noted the serial numbers of each bill, and gave the money to the informant to purchase drugs from the Defendant.

Approximately thirty minutes before the transaction, Investigator Chunn instructed the informant to call the Defendant over a speakerphone to arrange a meeting, and their conversation was recorded. Investigator Chunn testified that prior to the transaction, he searched the informant for weapons and drugs and did not find any methamphetamine or other contraband on the informant. A small video recording device was placed on the informant's shoe. Investigator Chunn was driving an unmarked, gray Ford Fusion. He dropped the informant off at Dollar General and parked in a parking lot located across from Dollar General. Investigator Chunn testified that he saw the Defendant enter the Dollar General parking lot in a Pontiac G6 and the informant enter the vehicle.

Investigator Chunn said that when the informant exited the Defendant's car, Investigator Chunn knew that the drug transaction had occurred, activated the blue lights on his car, drove to the Dollar General parking lot, and ordered the Defendant to exit his car. The Defendant did not comply. Investigator Chunn exited his car, drew his gun, and said, "Sheriff's Office, get out of the vehicle now." The Defendant still did not comply with Investigator Chunn's order. Investigator Chunn was wearing an "undercover" vest with "Sheriff" on the back and a law enforcement badge clipped on the left side.

Other law enforcement officers arrived and attempted to block the Defendant's car with their vehicles. One of the officers was Deputy Chris Smith, who was in uniform and was driving a marked law enforcement vehicle that was equipped with a video camera, blue lights, and a siren. The Defendant drove away, striking Investigator Chunn's vehicle. The informant remained at the Dollar General, and Investigator Chunn said his lieutenant recovered the camera from him. No drugs were recovered from the informant.

The Defendant then led the officers on a high speed chase down Highway 14 toward Shelby County. Investigator Chunn was behind the Defendant in an unmarked car. Deputy Smith was behind Investigator Chunn in a marked vehicle with his siren and blue lights on, and multiple officers were behind Deputy Smith.

Investigator Chunn testified that the Defendant was driving eratically, "weaving in and out of traffic," and driving into "head-on traffic as well. It was in an effort to elude law enforcement." Investigator Chunn stated that the chase occurred around lunch time

and that several vehicles were driving on the highway. He also stated that the Defendant's driving placed others in danger and that the Defendant forced cars to pull over on the side of the road. Investigator Chunn's car reached 115 miles per hour, and the Defendant later admitted to reaching a speed of 145 miles per hour.

Shortly after the chase began, Investigator Chunn saw a small baggie thrown from the driver's side window of the Defendant's car. Deputy Wesley Ballard later went to the area and found a baggie containing seven oxycodone pills.

The Defendant reached an intersection that was congested with traffic. He swerved out into head-on traffic, jerked his car back over, and ran off the road about thirty feet and into a ditch. His car flipped into the air and landed on its roof. Investigator Chunn described the Defendant as alert and scared and said the Defendant complained of his back hurting. The Defendant was transported to a hospital where he remained for less than twenty-four hours before he was transferred to the county jail.

Officers searched the Defendant's car and recovered $180 in cash that matched the bills used in the transaction at Dollar General. Officers also found one baggie containing four individual baggies with a clear rock-like substance. The substance was tested and determined to equal 2.09 grams of methamphetamine. Investigator Chunn testified that clear methamphetamine is a purer form of methamphetamine.

Investigator Chunn later interviewed the Defendant, who made a statement in which he denied selling methamphetamine. Investigator Chunn said the Defendant never claimed that any drugs were planted on him. The Defendant admitted that the pills belonged to him and never denied throwing the pills out of his car window. Investigator Chunn determined that the Defendant's driver's license was suspended.

The entire video recording taken from the camera attached to the informant's shoe was entered into evidence at trial. The prosecutor stated during the trial that while the recording lasted for approximately one and one-half hours, he only showed eleven minutes to the jury, which included the time during which the informant was inside the Defendant's car. The recording only depicted the floor area of the Defendant's car and did not show the actions of the Defendant and the informant. However, the Defendant was heard in the recording stating that one baggie contained "0.7" and not "0.5." The Defendant then stated, "Here you go." Around the time that the informant exited the Defendant's car, officers were heard arriving, and one officer is heard ordering the Defendant to get out of the car. The Defendant was heard driving away followed by the sound of sirens.

According to the remainder of the video, which was not shown to the jury during the trial, the informant remained in the area and walked around unsupervised for more

than twenty-five minutes before an officer arrived to retrieve the camera. The camera continued to record while the informant explained to the officer what had occurred. The informant told the officer that Investigator Chunn instructed him drop the drugs that he had purchased from the Defendant inside the Defendant's car as he was getting out of the car so that the Defendant would be in possession of the drugs when officers stopped him. The informant stated that he complied with the instructions and dropped the drugs between the passenger seat and the door as he was exiting.

On cross-examination, Investigator Chunn testified that the informant had been a confidential informant for approximately one week prior to the incident. The informant was a paid informant who was not "working off a case" but was seeking to make additional money. The drug transactions had to be completed in order for the informant to receive compensation, and the informant was compensated for his work in this case. Investigator Chunn stated that the informant came up with the idea of targeting the Defendant and purchasing methamphetamine from the Defendant. Officers did not conduct an independent investigation prior to the informant contacting the Defendant. Investigator Chunn said that during the telephone call, the informant and the Defendant only discussed the Defendant coming to the store and did not discuss any specific drugs or the quantity and price of the drugs.

Investigator Chunn acknowledged that at one point prior to the transaction, the informant entered the Dollar General, and Investigator Chunn called him and instructed him to come back outside. Investigator Chunn stated that as a result, he was not able to view the informant during the entire period prior to the drug transaction and that there was no way to verify that the informant did not obtain contraband. Investigator Chunn noted that the drug transaction could not be viewed from the video recording taken from the camera on the informant's foot and acknowledged that no drugs were ever recovered from the informant. The Defendant told Investigator Chunn during the interview that he believed he was going to be robbed when Investigator Chunn approached his car.

The Defendant testified that he met the informant at the Dollar General in order to obtain money from the informant to purchase marijuana for the informant. The Defendant stated that when the informant called him prior to the meeting, the informant mentioned methamphetamine but that the Defendant changed the subject because he had no knowledge of how to obtain methamphetamine.

The Defendant stated that he did not know the informant well and thought the informant might try to rob him. The Defendant said as soon as the informant gave him the money, Investigator Chunn pulled up in his vehicle, jumped out, pointed a gun at the Defendant, and ordered the Defendant to exit his car. The informant then jumped out of the Defendant's car. The Defendant stated that Investigator Chunn was in plain clothes

- 4 -

and was driving a "regular" vehicle. The Defendant said he believed he was being robbed and "did everything [he] could to get out of that situation."

The Defendant testified that he was driving 130 to 145 miles per hour down the highway and explained that he was scared and trying to return home. He denied that any vehicles were behind him while traveling down Highway 14. He said he could "vaguely" see Investigator Chunn's car from a distance but denied seeing any flashing lights. He stated that it never occurred to him that the people following him were police officers. Rather, he maintained that he believed people were trying to rob him and were still pursuing him. The Defendant acknowledged that many other vehicles were on the highway and that he was weaving around them. He denied that any accidents occurred as a result of his driving and stated that when he approached vehicles head-on, none of the vehicles were so close enough to him that an accident could have occurred.

The Defendant testified that during the police interview, he repeatedly denied selling methamphetamine. He maintained at trial that the methamphetamine located in his car did not belong to him. Rather, he stated that the informant must have placed it in his car and that he was not paying attention to the informant once Investigator Chunn arrived. He acknowledged that he had been addicted to oxycodone for a long time and that the pills were for his personal use.

On cross-examination, the Defendant acknowledged that his driver's license was suspended at the time of his arrest. He also acknowledged that he did not have a prescription for the oxycodone pills and maintained that he only used the pills when he began experiencing symptoms from withdrawals. He said he threw the pills out of his car window because he believed he was going to be robbed and was discarding all items that he believed would cause someone to harm him.

The Defendant testified that the informant requested methamphetamine on other occasions and that he always told the informant that he did not have methamphetamine. The Defendant stated that he met the informant at the Dollar General to make money off of him by assisting him in obtaining marijuana. The Defendant said that prior to the meeting, they did not discuss the amount of money that the informant was to bring. The Defendant maintained that his conversation with the informant inside the car involved marijuana, that he was framed, and that the informant placed the methamphetamine inside his car.

The Defendant was convicted of possession of 0.5 grams or more of methamphetamine with the intent to deliver; delivery of 0.5 grams or more of methamphetamine; simple possession of oxycodone as a lesser included offense of the original charge of possession of oxycodone with the intent to deliver; tampering with

evidence; felony evading arrest with risk of danger to others; and driving on a canceled, suspended, or revoked driver's license. Following a sentencing hearing, the trial court sentenced the Defendant as a Range II, multiple offender to twelve years for each methamphetamine conviction, six years for the tampering with evidence conviction, and four years for the felony evading arrest conviction. The trial court also sentenced the Defendant to eleven months and twenty-nine days for the possession of oxycodone conviction and six months for the driving on a suspended license conviction. The trial court ordered that the Defendant's sentence for the evading arrest conviction run consecutively to his sentences for the methamphetamine convictions. The trial court required that the sentences for the remaining convictions run concurrently, for an effective sentence of sixteen years.

## ANALYSIS

### A. Sufficiency

The Defendant maintains that the evidence is insufficient to support his convictions for possession of 0.5 grams or more of methamphetamine with the intent to deliver and delivery of 0.5 grams or more of methamphetamine. Specifically, the Defendant argues that the evidence is insufficient to establish that he possessed methamphetamine or delivered methamphetamine to the informant. The State responds that the evidence is sufficient to support the convictions.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

It is a criminal offense for a defendant to knowingly deliver a controlled substance or knowingly possess a controlled substance with the intent to deliver the controlled substance. T.C.A. § 39-17-417(a)(1), (4) (2014). It is a Class B felony if the amount of the controlled substance is 0.5 grams or more "of any substance containing … methamphetamine." *Id.* § 39-17-417(c)(1). The term "deliver" is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." *Id.* § 39-17-402(6).

To convict a defendant of possession of a controlled substance with intent to deliver, the State must prove beyond a reasonable doubt that the defendant: "(a) knowingly possessed a controlled substance, (b) with the intent to deliver, and (c) the actual weight of the controlled substance." *State v. Armard Reeves*, No. W2012-02656-CCA-R3-CD, 2014 WL 1593153, at *7 (Tenn. Crim. App. Apr. 17, 2014) (citing *State v. Belew*, 348 S.W.3d 186, 189 (Tenn. Crim. App. 2005); *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000)). "Proof that a possession is knowing will usually depend on inference and circumstantial evidence." *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995) (citing *United States v. Pierre*, 932 F.2d 377, 392 (5th Cir. 1991)). "Knowledge may be inferred from control over the vehicle in which the contraband is secreted." *Id.* (citing *Pierre*, 932 F.2d at 392).

Pursuant to Tennessee Code Annotated section 39-17-419, the jury may infer "from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." The "other relevant facts" that may give rise to an inference of intent to sell or deliver include "the absence of drug paraphernalia, the presence of a large amount of cash, the packaging of the drugs, and the street value of the drugs." *State v. Anthony Brown*, No. W2010-01764-CCA-R3-CD, 2012 WL 1154284, at *3 (Tenn. Crim. App. Mar. 30, 2012).

In reviewing the sufficiency of the evidence, we note that only a portion of the video recording from the camera on the informant's shoe was shown to the jury at trial. However, the entire recording was entered into evidence without objection. In *State v. Jessica Kennedy*, this court addressed the effect of entering an entire recording as an exhibit while only playing portions of the recording for the jury. No. E2013-00260-CCA-R3-CD, 2014 WL 3764178, at *59-60 (Tenn. Crim. App. July 30, 2014). This

court determined that the trial court did not abuse its discretion in allowing the defendant to only play portions of a video-recorded statement that was entered into evidence in its entirety in the interest of time. *Id.* at \*60. This court reasoned that the entire recording was entered as an exhibit and was available for the jury to view during its deliberations had it chosen to do so. *Id.*; *see* Tenn. R. Crim. P. 30.1 (allowing a jury to take to the jury room for examination during deliberations all exhibits and writings, except depositions). This court stated that the trial court's ruling did not result in the exclusion of the evidence but limited the manner in which it was published to the jury. *Jessica Kennedy*, 2014 WL 3764178, at \*60.

Likewise, in the present case, the State did not limit the jury's consideration of the recording from the camera on the informant's shoe to that portion of the recording that it published to the jury during the trial. Rather, the entire recording was entered as an exhibit and was readily available for the jury to view during deliberations. *See* Tenn. R. Crim. P. 30.1; *Jessica Kennedy*, 2014 WL 3764178, at \*60. Since the jury could have properly considered the recording in its entirety in determining the Defendant's guilt, we may likewise consider the entire recording in examining the sufficiency of the evidence.

The evidence presented at trial, when viewed in a light most favorable to the State, established that officers utilized the services of the informant, a confidential informant, in an effort to purchase methamphetamine from the Defendant. Investigator Chunn searched the informant prior to the meeting and did not locate any drugs or contraband on him. Investigator Chunn gave the informant $180 in cash to purchase methamphetamine from the Defendant. Once the Defendant arrived at the Dollar General parking lot, the informant entered the Defendant's car where the Defendant referenced a baggie containing "0.7" rather than "0.5" and said, "Here you go." The informant stated that after he received the drugs from the Defendant, he dropped the drugs between the passenger seat and the door.

Once the informant exited the Defendant's car, officers attempted to arrest the Defendant, but the Defendant fled and led numerous officers in a high speed chase down a busy highway before he wrecked his car. While fleeing, the Defendant discarded a baggie of oxycodone pills. Officers located 2.09 grams of methamphetamine and the $180 that had been given to the informant to purchase drugs inside of the Defendant's car. The methamphetamine was packaged in four individual baggies that were included in one larger baggie. No evidence was present establishing that the officers discovered drug paraphernalia or any other evidence that the methamphetamine was for the Defendant's personal use.

We conclude that this evidence was sufficient to support the Defendant's convictions for possession of 0.5 grams or more of methamphetamine with the intent to

deliver and delivery of 0.5 grams or more of methamphetamine. Although the Defendant testified at trial that he never possessed or distributed methamphetamine and that the informant must have planted the drugs in his car, the jury rejected the Defendant's testimony, which is their prerogative. *See Bland*, 958 S.W.2d at 659. The jury resolved any inconsistencies in the evidence and credibility issues with their verdict, and we will not re-weigh or re-evaluate the evidence on appeal. The Defendant is not entitled to relief on this basis.

Although not raised by the parties, we note that the Defendant's dual convictions for possession of 0.5 or more of methamphetamine with the intent to deliver and delivery of 0.5 grams or more of methamphetamine where the same drugs supported both the possession conviction and the delivery conviction violate the principles of double jeopardy. *See State v. Zibria Marico Carero*, No. E2015-00140-CCA-R3-CD, 2015 WL 9412836, at *5-8 (Tenn. Crim. App. Dec. 22, 2015) (holding that the defendant's multiple convictions for possession of cocaine with the intent to sell and deliver and the sale and deliver of cocaine violated the principles of double jeopardy) , *perm. app. denied* (Tenn. May 5, 2016). Accordingly, we remand for entry of corrected judgments reflecting merger of the Defendant's methamphetamine convictions. *See id.* at *8. Because the trial court ordered the Defendant to serve his sentences for his methamphetamine convictions concurrently, the merger of the offenses does not alter the Defendant's effective sentence.

## CONCLUSION

Upon reviewing the record and the applicable law, we affirm the judgments of the trial court. We remand for entry of corrected judgments reflecting that the Defendant's convictions for possession of 0.5 grams or more of methamphetamine with the intent to deliver and delivery of 0.5 grams or more of methamphetamine are merged.

_____
JOHN EVERETT WILLIAMS, JUDGE

- 9 -